ESSELMAN v GARDEN CITY HOSPITAL

Docket Nos. 280723 and 280816. Submitted January 14, 2009, at Detroit. Decided June 4, 2009, at 9:00 a.m.

Bruce Esselman, as personal representative of the estate of David Esselman, deceased, brought a medical malpractice action in the Wayne Circuit Court against Garden City Hospital, David J. Fertel, D.O., and others. The defendants moved for summary disposition, alleging that the notices of intent to file a claim sent by the plaintiff failed to comply with MCL 600.2912b because the notice sent to each defendant did not specifically state a particularized standard of care for that individual defendant and further alleging that the affidavits of merit filed with the complaint failed to comply with MCL 600.2912d because they did not explain how the defendants' conduct caused the decedent's death. The court, Gershwin A. Drain, J., denied the motions. The Court of Appeals granted the defendants' applications for leave to appeal and consolidated the appeals.

The Court of Appeals held:

1. MCL 600.2912b(4), which sets forth a number of requirements with which a notice of intent must comply, does not require multiple statements or state that plaintiffs must explicitly line up particularized standards of care with individual defendants.

2. The statement of the standard of care does not need to contain any explicit statement of whether a corporate defendant is directly or vicariously liable. It only needs to serve as adequate notice to the defendants whether the plaintiff intends to proceed against them on a vicarious liability theory. Although all the information required by the statute must be specifically identified in an ascertainable manner within the notice, it does not need to be set forth in any particular method or format. If multiple defendants are involved, the notice of intent needs to provide enough information for each of the defendants to discern the general nature of what theory he, she, or it may expect to defend against, nothing more. Each defendant must be reasonably able to discern the general nature of the cause of action to be alleged against them.

3. Although a notice of intent must contain a statement describing all the items of information enumerated in MCL

600.2912b(4), those statements need not be any more specific than would be required of allegations in a complaint or other pleading: they must only give fair notice to the other party. A plaintiff must only provide a good-faith statement of what is being claimed against each defendant.

4. It is insufficient if a notice of intent only provides notice or only provides a statement. It must do both. The plaintiff did provide the requisite statement and unambiguously alleged a collective failure by all the defendants, in both supervisory and direct roles, to take fairly specific actions on the basis of fairly specific information. The trial court properly determined that the notice of intent satisfied MCL 600.2912b.

5. The purposes of the affidavits of merit, as with the notices of intent, would not be furthered by examining individual components in isolation from the whole. Even if a given section of an affidavit does not adequately address proximate cause, the dispositive question is whether the affidavit as a whole nevertheless explains how the alleged malpractice proximately caused the injury. Each of the affidavits in this case was not lacking in detail or difficult to decipher with regard to proximate cause. The trial court properly determined that the affidavits of merit satisfied MCL 600.2912d.

Affirmed.

SAAD, C.J., dissenting, stated that the plaintiff was required by MCL 600.2912b(4) and Supreme Court precedent to state the specific standard of practice or care with respect to each health professional or health facility named in the notice. The plaintiff did not meet the statutory requirement. This failure prevents the defendants from having the information necessary for the performance of their reciprocal obligations under the medical malpractice statutory scheme. The trial court should have granted the defendants' motions for summary disposition.

1. NEGLIGENCE — MEDICAL MALPRACTICE — NOTICE OF INTENT TO FILE SUIT.

The statute that sets forth the requirements with which a notice of intent to bring a medical malpractice action must comply does not require multiple statements or state that the plaintiff must explicitly line up particularized standards of care with individual defendants (MCL 600.2912b[4]).

2. NEGLIGENCE — MEDICAL MALPRACTICE — NOTICE OF INTENT TO FILE SUIT.

Although all the information required to be contained in a notice of intent to bring a medical malpractice action must be specifically identified in an ascertainable manner within the notice, it need not be set forth in any particular method or format; the statements

need not be any more specific than would be required of allegations in a complaint or other pleading and must provide a good-faith statement that gives each defendant fair notice of what is being claimed against the defendant.

3. NEGLIGENCE — MEDICAL MALPRACTICE — NOTICE OF INTENT TO FILE SUIT — MULTIPLE MEDICAL MALPRACTICE DEFENDANTS.

A notice of intent to bring a medical malpractice action involving multiple defendants must provide each defendant enough information to discern the general nature of what theory he, she, or it may expect to defend against; each defendant must be reasonably able to discern the general nature of the cause of action to be alleged against the defendant (MCL 600.2912b[4]).

4. NEGLIGENCE — MEDICAL MALPRACTICE — AFFIDAVITS OF MERIT.

The individual components of an affidavit of merit in a medical malpractice action are not examined in isolation from the whole to determine whether the affidavit as a whole explains how the alleged malpractice proximately caused the injury (MCL 600.2912d).

*Fieger, Fieger, Kenney, Johnson & Giroux, P.C.* (by *Heather A. Jefferson* and *Vernon R. Johnson*), for the plaintiff.

*Feikens, Stevens, Kennedy & Galbraith, P.C.* (by *Jon Feikens*), for Garden City Hospital.

*Rutledge, Manion, Rabaut, Terry & Thomas, P.C.* (by *Matthew J. Thomas* and *Paul J. Manion*), for David J. Fertel, D.O., and others.

Before: SAAD, C.J., and DAVIS and SERVITTO, JJ.

DAVIS, J. In these consolidated appeals, the defendants appeal orders that denied their respective motions for summary disposition. This medical malpractice case arises out of David Esselman's death, while in the care of defendants, from gangrenous cholecystitis[1]

---

[1] Cholecystitis is inflammation of the gallbladder.

and sepsis, each of which he apparently had for at least 24 hours before his death. Defendants contend that plaintiff's notice of intent and affidavits of merit were insufficient. The trial court disagreed. We affirm.

The decedent was admitted to Garden City Hospital on September 26, 2003. He was experiencing pain in his abdomen, back, and chest, and he was nauseous and vomiting. Initial testing revealed a small obstruction in the decedent's bowel. The next day, he continued to have the same symptoms, but additionally had a body temperature of 101 degrees Fahrenheit. Antibiotics and further testing were ordered, but no computerized tomography (CT) scan. On the next day, his temperature rose to 102 degrees. A CT scan and a dimethyl iminodiacetic acid (HIDA) scan were performed, from which it was concluded that his common bile duct was obstructed and that there were indications that the decedent suffered from acute cholecystitis. A second HIDA scan was ordered, though it appears it was not completed. Treating physicians ordered the attending nurses to report any rises in body temperature.

On September 29, 2003, the decedent's body temperature was recorded as being 102.7 degrees at 3:00 a.m., 102.6 degrees at 6:30 a.m., and 103 degrees by 8:00 a.m. At 1:30 p.m. that day, the decedent underwent surgery and died during the procedure. The certificate of death stated that he had died as a result of gangrenous cholecystitis and sepsis, each of which he had for at least 24 hours before his death.

On June 7, 2005, plaintiff received his letter of authority appointing him as personal representative of the decedent's estate. On September 26, 2005, plaintiff sent his notice of intent to file a claim (NOI) to the

various defendants.[2] The NOI was 14 pages long and included a lengthy factual recitation of the decedent's stay at Garden City Hospital, including detailed discussions of the treatment provided by various individuals, as well as the acts and errors of the individual defendants. Furthermore, it contained the following statement of the "applicable standard of practice or care alleged":

> Pursuant to MCL 333.21513 entitled: "Duties and Responsibilities of Owner, Operator or Governing Body of Hospitals", the owner, operator and governing body of a hospital licensed under this Article (A) are <u>responsible</u> for <u>all phases</u> of the operation of the hospital, selection of the medical staff, <u>and quality of care rendered in the hospital</u>.
>
> The standard of care required from the above-named physicians, residents, nurses, etc., and entities include the following but are not limited to:
>
> a. To timely diagnose and treat (an[d]/or refer to treat) gallbladder disease including but not limited to performance of timely ultrasound, HIDA scan, CT scan and/or MRI [magnetic resonance imaging] of the abdomen;
>
> b. To fully and completely investigate and work up the patient for these disease processes including but not limited to appreciating the increasing laboratory values and deteriorating clinic[al] picture which began no later than Saturday, September 27, 2003; on Saturday, September 27, 2003 perform the above diagnostic testing so as to work up gallbladder disease which was clearly suggested by not only the clinical picture but also the laboratory results. To timely order and obtain a gastroenterological consultation and participation in the care of this patient so as to determine whether this was in fact gallbladder disease versus some other GI [gastrointestinal] problem; and to timely determine whether a pre-operative ERCP [endo-

---

[2] Plaintiff's NOI included allegations against defendants, as well as against individuals who agreed to settle with plaintiff and are no longer parties to this matter.

scopic retrograde cholangiopancreatography] and/or cho-
langiogram was necessary as well as to work up the blood
in the stool and declining hemoglobin levels;

c. To timely perform a cholecystectomy on Saturday,
September 27, 2003 or, at the very latest Sunday, Septem-
ber 28, 2003;

d. Failure to obtain serial abdomen films and exams as
well as serial labs including arterial lactate as ordered on
September 27, 2003 by the physicians and nursing staff;

e. On Sunday, September 28, 2003 failure by the physi-
cians and nurses involved with Mr. Esselman's care to
appreciate the findings as evidenced by the CT scan and
HIDA scan that in fact this was acute cholecystitis and that
Mr. Esselman had a deteriorating clinical picture including
high fever, markedly abnormal laboratory values but espe-
cially significantly increased liver studies and white blood
count, and that his abdominal examination revealed tym-
pany necessitating an emergent operation on his gallblad-
der;

f. Not to unnecessarily delay Mr. Esselman's surgery
such that it would be performed on either Saturday, Sep-
tember 27, 2003 or Sunday, September 28, 2003 at the very
latest;

g. To order and obtain a timely gastroenterology consul-
tation for a preoperative ERCP and in the event that one
was unavailable, obtain those services from another GI
[gastroenterologist] or alternatively proceed with the sur-
gery without an ERCP;

h. Throughout the remainder of Sunday, September 28,
2003 that the nursing staff timely and immediately report
signs of clinical deterioration such as increasing tempera-
ture and increasing abdominal symptoms to the attending
physician after it was evident that the house officer would
or did nothing with such information as well as failure by
the nursing staff to record vital signs once every hour;

i. On September 29, 2003 failure by the nursing staff to
immediate[ly] report markedly abnormal laboratory values

and increasing temperature to either the house officer and/or the attending physicians;

j. Failure by the physicians and nursing staff to assure that an immediately and emergent operation was performed on Monday, September 29, 2003 instead of same occurring in the afternoon hours;

k. Failure by the anesthesiologist and/or CRNA [certified registered nurse anesthetist] to closely monitor end tidals $CO_2$ such that once they began to rise the anesthesiologist should have been immediately notified and timely interaction should have occurred including, but not limited to[,] hyperventilating the patient, provide bicarbonate, etc.;

l. Failure to timely prevent and otherwise identify and treat the signs and symptoms of sepsis; and,

m. Any and all other breaches of the standard of care found to be violated through the course of discovery. [Underlining in original.]

On March 28, 2006, plaintiff filed his complaint, accompanied by four affidavits of merit.

Defendants moved for summary disposition; their motions made generally the same assertions that (1) the NOI failed to comply with MCL 600.2912b because it did not specifically state a particularized standard of care for each individual defendant and that (2) the affidavits of merit failed to comply with MCL 600.2912d because they did not explain how defendants' conduct caused the decedent's death. The trial court denied those motions, and this Court granted defendants' applications for leave to appeal.

This Court reviews a trial court's decision regarding summary disposition de novo. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). This Court's review is limited to the evidence that was presented to the trial court. *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 313 n 4; 660 NW2d 351 (2003). Further-

more, this case presents an issue of statutory interpretation, which is also subject to review de novo. *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004).

Pursuant to MCL 600.2912b(1), a person must send an NOI to a health care facility or professional at least 182 days before he or she commences any action for medical malpractice against the facility or professional. Furthermore, MCL 600.2912b(4) sets forth a number of requirements with which the NOI must comply. Specifically, it states:

> The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:
>
> (a) The factual basis for the claim.
>
> (b) The applicable standard of practice or care alleged by the claimant.
>
> (c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.
>
> (d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.
>
> (e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.
>
> (f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

The plain language of the statute therefore does not require multiple statements, nor does it state that plaintiffs must explicitly line up particularized standards with individual defendants.

We are first urged to conclude that the Legislature *did* intend to require plaintiffs to explicitly provide such an analysis in NOIs on the basis that the Legislature

used singular words in the above statute. However, that argument is entirely contrary to the dictates of MCL 8.3b, which states that in construing statutes, singular and plural words "extend to and embrace" or "may be applied and limited to" each other.

Defendants also rely on *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679; 684 NW2d 711 (2004). In that case, the plaintiff provided NOIs to the defendants, and each of those NOIs contained an identical (other than the name of each defendant) recitation of the applicable standard of care or practice. Our Supreme Court found this unacceptable, in *part* because the statements did not contain anything specifically and explicitly advising the corporate-entity defendants whether the plaintiff intended to proceed against them on a theory of direct liability or vicarious liability. *Id.* at 692-693. But our Supreme Court also explained more fully that the recitations in the NOIs were simply tautologies: in effect, they merely stated that the defendants violated the standard of care by violating the standard of care. *Id.* at 693-694. In contrast, the statement of standard of care in this case is clearly not a tautology, even when read in isolation from the recitation of facts.

Moreover, defendants' argument misconstrues what *Roberts* requires in the way of specifying vicarious or direct liability. The *Roberts* holding was that the statement therein "fails to *indicate* whether plaintiff was alleging" vicarious or direct liability, mostly because there was a confusing ambiguity between the complaint's apparent allegation of vicarious liability for the negligence of the hospital's agents, whereas the NOI "implied that plaintiff alleged direct negligence against these defendants for negligently hiring or negligently granting staff privileges to the individual defendants."

*Id.* at 693 (emphasis added). In other words, the statement of the standard of care does not need to contain any explicit statement of whether a corporate defendant is directly or vicariously liable; rather, it only needs to "serve as adequate notice" to the defendants whether plaintiff intends to proceed against them on a vicarious liability theory. *Id.* Although all the information required by the statute must be "specifically identified in an ascertainable manner within the notice," it does not need to be set forth in any particular "method or format." *Id.* at 701.

Defendants further rely on this Court's recent decision in *Shember v Univ of Michigan Med Ctr*, 280 Mich App 309; 760 NW2d 699 (2008). We find *Shember* inapplicable for two significant reasons, either of which would be sufficient by itself. First, the NOI in this case was crafted in 2005, and *Shember* was decided three years later. Even if *Shember* imposed additional specificity requirements, which it did not, it would be unjust and unfair to evaluate the sufficiency of plaintiff's NOI under a standard more stringent than what existed *at the time* the NOI was drafted.

In any event, *Shember* involved a medical malpractice suit against a number of defendants, and it was alleged that the NOI failed to identify the applicable standard of practice or care with regard to some of those defendants. *Id.* at 319-320. This Court only recited what *Roberts* had already explained: (1) that the standard of care must be described as something more specific than literally "the standard of care," (2) that all named defendants must be able to discern from the NOI generally what theory they are expected to defend against, and (3) that different defendants might be expected to comply with different standards of care. *Shember* does not expand on *Roberts*; rather, it holds

the same principle that if multiple defendants are involved, the NOI needs to provide enough information for each of those defendants to discern the general nature of what theory he, she, or it may expect to defend against, nothing more.

As discussed, *Roberts* did not hold that the NOI must explicitly state whether a plaintiff intends to proceed against a corporate defendant on a theory of direct or vicarious liability. Rather, plaintiffs should not present defendants with ambiguity regarding the nature of the action of which they are providing notice. In other words, the *Roberts* Court was concerned that each defendant must be reasonably able to discern the general nature of the cause of action that will be alleged against them.

Our Supreme Court has explained that even if an NOI "may conceivably have apprised [a defendant] of the nature and gravamen of [the] plaintiff's allegations," the applicable statutory standard nevertheless requires NOIs to contain "a 'statement' describing" all the items of information enumerated in MCL 600.2912b(4). *Boodt v Borgess Med Ctr*, 481 Mich 558, 560-561; 751 NW2d 44 (2008). However, our Supreme Court did not address, let alone criticize, this Court's prior discussion explaining that, otherwise, those statements did not need to be any more specific than would be required of allegations in a complaint or other pleading: they must only give fair notice to the other party. *Boodt v Borgess Med Ctr*, 272 Mich App 621, 626-628; 728 NW2d 471 (2006). Indeed, our Supreme Court reaffirmed that a plaintiff must only provide a good-faith statement of what is being claimed against each defendant, recognizing that discovery would not yet have begun. *Boodt*, 481 Mich at 561. Along those same lines, this Court observed that medical profession-

als surely keep records, particularly of any "mishaps"; consequently, as long as the technical requirements of the statute are complied with, it "strains credulity to conclude" that the defendants would not understand the nature of the suit plaintiff was planning to commence. See *Boodt*, 272 Mich App at 632-633.

Thus, the issues are whether the NOI contains "a statement" that provides information containing all the enumerated requirements of MCL 600.2912b(4), and whether those statements reasonably communicate to a medical professional or medical facility (which surely has better access to information than the plaintiff) the nature of the claim the plaintiff intends to pursue against the medical professional or medical facility. In other words, *Roberts* and *Boodt*, when read together, hold that it is insufficient if an NOI *only* provides notice or *only* provides "a statement." It must do both. Here, it is clear that plaintiff did provide the requisite statement, and plaintiff unambiguously alleges a collective failure by all defendants, in *both* supervisory and direct roles, to take fairly specific actions on the basis of fairly specific information.

We agree with the trial court that plaintiff's NOI satisfied MCL 600.2912b.

Next, pursuant to MCL 600.2912d, a plaintiff in a medical malpractice cause of action must submit an affidavit of merit with the complaint. The affidavit must be signed by a health care professional that could reasonably qualify as an expert witness. MCL 600.2912d(1). The affidavit must set forth the following:

> (a) The applicable standard of practice or care.

> (b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.

> (c) The actions that should have been taken or omitted

by the health professional or health facility in order to have complied with the applicable standard of practice or care.

(d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice. [MCL 600.2912d(1).]

Defendants allege that plaintiff's affidavits of merit failed to comply with MCL 600.2912d(1)(d) because they merely concluded that the allegedly negligent acts were the proximate cause of the decedent's death, without specifying exactly how the acts caused the death.

Defendants primarily rely on an unpublished, and therefore nonbinding, case from this Court that nevertheless fails to suggest that the affidavits of merit here were deficient. In *Bond v Cooper (On Reconsideration)*, unpublished opinion per curiam of the Court of Appeals, issued May 22, 2008 (Docket No. 273315), this Court observed that the plaintiff's affidavit of merit merely stated, " 'the violations of the standard of care are a proximate cause of the damages claimed by the Plaintiff.' " *Id.* at 3. This Court stated, "The deficiency of this affidavit of merit is apparent. Simply stating that violations of the standard of care 'are a proximate cause of the damages' does not fulfill the statutory requirement that the affidavit state the 'manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.' " *Id.* However, the Court continued to state that the deficiency in that case was "not remedied by an examination of the affidavit as a whole." *Id.* As this Court implied—and we now expressly state—the purpose of the affidavits of merit, as with NOIs, and as with documentary or statutory analysis in general, would not be furthered by examining individual components in isolation from the whole.[3] Thus, even if a given section of the

---

[3] In *Craig v Oakwood Hosp*, 471 Mich 67, 86-88; 684 NW2d 296 (2004), our Supreme Court explained that a mere correlation between

affidavit does not adequately address proximate cause, the dispositive question is whether the affidavit *as a whole* nevertheless explains how the alleged malpractice proximately caused the injury.

The actual sections of plaintiff's affidavits that address proximate cause are relatively conclusory in nature. Critically, however, the other portions of the affidavits are much more detailed. Each of the affidavits explains that the various health care professionals failed to treat the decedent's symptoms in a timely fashion, that his condition continued to deteriorate, that he developed sepsis and cholecystitis, and that he died. Moreover, defendants are sophisticated parties, knowledgeable in the field of medicine, and presumably in possession of reasonably illuminating records pertaining to the decedent's treatment and death. The affidavits of merit were not lacking in detail or difficult to decipher. They communicated that because of the alleged malpractice, the decedent's condition deteriorated and caused his death. To hold that they were deficient because the sections that addressed proximate cause lacked the specificity that other sections possessed would be to exalt form over substance.

We therefore agree with the trial court that plaintiff's affidavits of merit satisfied MCL 600.2912d.

Affirmed.

SERVITTO, J., concurred.

---

alleged malpractice and an injury is insufficient to establish proximate cause; but *Craig* addressed the elements of a medical malpractice cause of action pursuant to MCL 600.2912a, not the sufficiency of an affidavit of merit. Given that an affidavit of merit is attached to a plaintiff's complaint, and is thus produced before the discovery period, it would be inappropriate to hold an affidavit of merit to the same standard.

SAAD, C.J. (*dissenting*).

## I. INTRODUCTION

The legislation that comprehensively regulates the prerequisites for and the filing of medical malpractice claims in Michigan places significant obligations on plaintiffs and defendants that are not found in ordinary, garden-variety tort actions. The mutual obligations imposed by the Legislature are designed to streamline and settle medical malpractice disputes, even before they become lawsuits. *Neal v Oakwood Hosp Corp*, 226 Mich App 701, 705; 575 NW2d 68 (1997). Indeed, as a predicate to filing the litigation, a claimant must detail the factual basis for the claim, the applicable standard of practice or care, the manner in which the plaintiff claims the health professional breached that standard, what action the health professional should have taken to comply with the standard, and how the alleged breach caused the injury. After an exchange of medical records, the health professional must, in turn, respond to the plaintiff's detailed assertions by providing the factual basis for his or her defense, the standard of care the health professional believes applies, the manner in which the health professional complied with that standard, and the manner in which he or she believes that the claimed negligence did not proximately cause the alleged injury. Because medical malpractice claims may involve more than one health professional, including doctors and nurses in various specialties with different degrees of contact and control over the patient's care, our Supreme Court has, correctly in my view, held that these mutual obligations must be detailed with regard to each health professional. *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679; 684 NW2d 711 (2004). This obligation exists for the obvious reason

that the facts, standards of care, and complex medical questions will vary widely from doctor to nurse and from generalist to specialist. But today, in direct contradiction of the clear statutory mandate and the Supreme Court's ruling in *Roberts*, the majority dispenses with the obligation of a claimant to set forth this important information with regard to each health professional and holds, instead, that a general narrative about the patient's hospital stay suffices.

The majority conveniently ignores how 18 health professionals in this case, including resident doctors, surgeons, and nurses, should respond to this narrative in order to meet their individual statutory obligations to reply with applicable facts, the appropriate standard of care, and causation. Indeed, the majority justified its reasoning with the incorrect and spurious assertion that the health care professionals have the records. But, just as the majority ignores the reciprocal nature of the notice of intent requirements, it similarly ignores the mutual obligations of the claimant and health care providers to produce and exchange all relevant medical records before the litigation is commenced in order to further narrow the issues and the parties and to settle medical malpractice disputes. Moreover, the majority's studied refusal to acknowledge the rest of the statute also ignores another important feature of this legislation. After the detailing of facts, standards, and causation by the claimant and health care professionals and after the exchange of medical records, the claimant and health care professionals must produce affidavits from qualified medical experts swearing to the merits or defenses regarding duty, breach, and causation. Of course, this entire sequential and mutual statutory scheme falls apart if, as here, our Court holds that, at the first step of this multistep process, all a claimant must do is describe a series of events, without articulating what was required of each health care profes-

sional, how the professional breached that standard of care, and how that breach caused the injuries in issue.

## II. ANALYSIS

Our Supreme Court specifically held in *Roberts* that a plaintiff's notice of intent must comply with MCL 600.2912b(4)(b) "with respect to *each defendant.*" *Roberts, supra* at 695 (emphasis added).[1] Subsequent cases have similarly held that "[t]he alleged standard [of practice or care] must be particularized for each of the professionals and facilities named in the notices." *Bush v Shabahang*, 278 Mich App 703, 711; 753 NW2d 271 (2008). The common sense rule comports with the clear mandate of the statute. The statute, § 2912b(4), sets forth the requirements with which the notice of intent must comply:

> The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:
>
> (a) The factual basis for the claim.
>
> (b) The applicable standard of practice or care alleged by the claimant.
>
> (c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.
>
> (d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.

---

[1] Though the Court in *Roberts* specifically addressed the notice of intent requirement for the standard of care, its holding clearly applies to the other obligations in MCL 600.2912b(4), which require a claimant to also specify, with regard to each medical professional or facility, how the health professional or facility breached the applicable standard of care, what the professional or facility should have done to comply with the standard of care, and how the particular health professional or facility's alleged breach proximately caused the claimed injury.

(e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.

(f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim. [MCL 600.2912b(4).][2]

Plaintiff's notice of intent did not meet these statutory requirements because, although the notice includes some standards of care, it does not state which standards apply to which health professional or facility. As the Court in *Roberts* explained, "what is required is that the claimant make a good-faith effort to aver the specific standard of care that she is claiming to be applicable to each particular professional or facility that is named in the notice." *Roberts, supra* at 691-692 (emphasis deleted). In finding the notice of intent inadequate in *Roberts,* the Court further observed:

> Here, several different medical caregivers were alleged to have engaged in medical malpractice. Yet, rather than stating an alleged standard of practice or care for each of the various defendants—a hospital, a professional corporation, an obstetrician, a physician's assistant, and an emergency room physician—plaintiff's notices of intent allege an identical statement applicable to all defendants . . . . [*Id.* at 692.]

Here, the notice of intent merely sets forth a series of names followed by a series of standards and allegations and, contrary to the explicit holding in *Roberts,* plaintiff did not match the names to any of the standards of care, state how each health professional breached the applicable standard, and state how that breach caused harm to plaintiff's decedent.

---

[2] By definition, the statute contemplates that the claimant must give all health professionals the names of all other health professionals notified under MCL 600.2912b(4), thus clearly stating that *each* health professional must be individually notified of *each* subcategory under § 2912b(4).

In excusing this deficiency, the majority reasons that the *Roberts* Court merely warned that the standard of care set forth in the notice of intent may not be tautological and unresponsive, and that plaintiff made a good faith effort to set forth the applicable standards to satisfy the statutory requirements. But *Roberts* unequivocally states that a claimant is "required to make a good-faith averment of *some* particularized standard for each of the professionals and facilities named in the notices." *Id.* at 694 (emphasis in original). This rule stems from the plain language of the statute itself, which provides that a party may not commence a malpractice action until he or she has given "*the* health professional or health facility written notice" that includes the applicable standard of care and "[t]he manner in which it is claimed that the applicable standard of practice or care was breached by *the* health professional or health facility," and what the professional should have done differently. MCL 600.2912b(1),[3] and (4)(c) (emphasis added). In other words, each health professional called to defend a medical malpractice claim is entitled to specific notice of the recognized standard of acceptable professional practice or care in the community for his or her area of practice, specialty, or subspecialty, how the conduct of that health professional allegedly breached that standard, and what the plaintiff alleges the health professional should have done to comply with the applicable standard. A health facility is entitled to the same notice and, if vicarious liability is alleged, it stands to reason that the facility is

---

[3] MCL 600.2912b(1) provides:

> Except as otherwise provided in this section, a person shall not commence an action alleging medical malpractice against a health professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced.

entitled to notice of the specific standards, breaches, and what alleged action should have been taken by each medical professional.

Here, while plaintiff set forth a recitation of facts about the decedent's hospitalization, he made no effort to provide notice of which standard of care applied to or was breached by each named health professional or facility, a list that includes medical practices and professionals of varying types, training, and specialties. Indeed, plaintiff's notice of intent is directed to 18 separate health professionals and entities, including a cardiovascular surgeon, a doctor of internal medicine, two cardiovascular thoracic surgical residents, a gastroenterologist, a coronary vascular thoracic surgical resident, an anesthesiologist, a certified registered nurse anesthetist, four registered nurses, and several private medical entities, including Garden City Hospital and various medical groups. As the *Roberts* Court observed:

> The phrase "standard of practice or care" is a term of art in the malpractice context, and the unique standard applicable to a particular defendant is an element of a medical malpractice claim that must be alleged and proven. *Cox v Flint Bd of Hosp Mgrs,* 467 Mich 1, 10; 651 NW2d 356 (2002). The applicable standard is governed either by statute (see, for example, MCL 600.2912a[1], which sets forth the particular proofs that a malpractice plaintiff must present with respect to a defendant's "standard of practice or care," depending on whether the defendant is a general practitioner or a specialist) or, in the absence of a statutory standard, by the common law. *Cox, supra* at 5, 20. The standard of practice or care that is applicable, for example, to a surgeon would likely differ in a given set of circumstances from the standard applicable to an OB/GYN [obstetrician/gynecologist] or to a nurse. [*Roberts, supra* at 692 n 8.]

Later in the *Roberts* opinion, our Supreme Court further explained:

The dissent argues that nowhere in § 2912b(4) does the Legislature require that a plaintiff allege a "standard applicable specifically" to each defendant and, therefore, neither should this Court. However, as explained . . . the phrase "standard of practice or care" is a term of art. Proof of the standard of care is required in every medical malpractice lawsuit, and the Legislature has chosen to require a plaintiff to address standard of care issues in the notice of intent. Under a proper understanding of this term, the standard applicable to one defendant is not necessarily the same standard applicable to another defendant. Thus, we are attempting to do nothing more than interpret the Legislature's requirement in § 2912b(4)(b)—that a plaintiff provide a "statement" regarding the applicable "standard of practice or care" alleged. [*Roberts, supra* at 694 n 11 (citations omitted).]

Again, *Roberts* makes clear that a plaintiff's notice must comply with § 2912b(4)(b) "with respect to *each defendant.*" *Roberts, supra* at 695 (emphasis added). Here, plaintiff's notice of intent contains assertions regarding what, as a group, the "physicians, residents, nurses, etc. and entities" did or failed to do for Mr. Esselman, but contains no particularization of which listed actions or what alleged standards of care for health care providers apply to any one of the listed health professionals. Thus, the notice is insufficient to inform any one of the myriad specialists, interns, or nurses of what they "did not do or should have done to comply with the applicable standard of care." *Shember v Univ of Michigan Med Ctr*, 280 Mich App 309, 324; 760 NW2d 699 (2008).[4] As noted, different standards

---

[4] The majority makes the inconsistent assertion that this Court should not apply *Shember* if *Shember* creates any more rigorous requirements than those in *Roberts*, but it then concludes that *Shember* did not expand on the requirements set forth in *Roberts*. The latter statement is correct. *Shember* simply applied the law as it has been promulgated by our courts since *Roberts*. Moreover, to the extent the majority implies that *Shember* is distinguishable because it involved "a medical malpractice suit against

apply to different classes of health professionals and, without some specific indication of the standards applicable to each named health professional or facility, even a lengthy factual narrative like plaintiff's simply fails to reasonably communicate to each professional or facility the nature of the claim plaintiff intends to pursue.

Importantly, "[t]he purpose of the notice requirement is to promote settlement without the need for formal litigation and reduce the cost of medical malpractice litigation while still providing compensation for meritorious medical malpractice claims . . . ." *Neal,* *supra* at 705, citing Senate Legislative Analysis, SB 270, August 11, 1993; House Legislative Analysis, HB 4403-4406, March 22, 1993. For this reason, the allegations in the notice must be sufficiently specific to allow the health professional or facility to determine the basis of the plaintiff's claim against him, her, or it and decide whether to negotiate a settlement. Here, the lack of particularized information about what standard applies and what each health professional or facility did to breach the applicable standard prevents each from ascertaining the nature, scope, and substance of the allegations against him, her, or it and from engaging in any meaningful analysis or discussion about settling the case. Despite clear differences in their occupations, practices, and specialties, plaintiff's notice asserts that the various doctors and nurses were equally required to take certain actions and equally at fault for certain aspects of Mr. Esselman's care. This does not allow any of the health professionals or facilities to understand the specific contentions about their allegedly negligent

_____

a number of defendants," *ante* at 218, this case, too, involves a large number of defendants—18 health professionals and entities—and plaintiff's failure to articulate the appropriate standards of care applicable to each. Accordingly, pursuant to both *Roberts* and *Shember,* plaintiff's notice of intent was insufficient.

conduct and it clearly does not advance the important policy objective of promoting a fruitful settlement process.

The majority's decision advocates a buckshot approach to asserting a medical malpractice claim, which further ignores that the notice of intent provision is interconnected with the other statutory sections addressing the commencement of a claim. By minimizing the complainant's responsibilities under § 2912b(4)(b), it undermines the mutual obligations imposed by the remainder of the statutory scheme. Not only must the health professional specifically respond to the claimant's allegations with regard to the applicable duty, breach, and causation elements, he or she must provide the claimant with access to all medical records. MCL 600.2912b(5),[5] (7).[6] Thereafter, on the basis of all the

---

[5] MCL 600.2912b(5) states:

Within 56 days after giving notice under this section, the claimant shall allow the health professional or health facility receiving the notice access to all of the medical records related to the claim that are in the claimant's control, and shall furnish releases for any medical records related to the claim that are not in the claimant's control, but of which the claimant has knowledge. Subject to [MCL 600.6013(9)], within 56 days after receipt of notice under this section, the health professional or health facility shall allow the claimant access to all medical records related to the claim that are in the control of the health professional or health facility. This subsection does not restrict a health professional or health facility receiving notice under this section from communicating with other health professionals or health facilities and acquiring medical records as permitted in [MCL 600.2912f]. This subsection does not restrict a patient's right of access to his or her medical records under any other provision of law.

[6] MCL 600.2912b(7) states:

Within 154 days after receipt of notice under this section, the health professional or health facility against whom the claim is made shall furnish to the claimant or his or her authorized representative a written response that contains a statement of each of the following:

foregoing documentation, a plaintiff must file an affidavit
of merit from an appropriate medical professional to
further narrow the issues by setting forth the applicable
standard of care, an opinion about how that standard of
care was breached, what actions should have been taken
to comply with the standard of care, and how the alleged
breach proximately caused the injury. MCL 600.2912d.[7] In
turn, the health care defendant must file an affidavit of

---

(a) The factual basis for the defense to the claim.

(b) The standard of practice or care that the health professional
or health facility claims to be applicable to the action and that the
health professional or health facility complied with that standard.

(c) The manner in which it is claimed by the health professional
or health facility that there was compliance with the applicable
standard of practice or care.

(d) The manner in which the health professional or health
facility contends that the alleged negligence of the health profes-
sional or health facility was not the proximate cause of the
claimant's alleged injury or alleged damage.

[7] MCL 600.2912d provides:

(1) Subject to subsection (2), the plaintiff in an action alleging
medical malpractice or, if the plaintiff is represented by an
attorney, the plaintiff's attorney shall file with the complaint an
affidavit of merit signed by a health professional who the plain-
tiff's attorney reasonably believes meets the requirements for an
expert witness under section 2169. The affidavit of merit shall
certify that the health professional has reviewed the notice and all
medical records supplied to him or her by the plaintiff's attorney
concerning the allegations contained in the notice and shall
contain a statement of each of the following:

(a) The applicable standard of practice or care.

(b) The health professional's opinion that the applicable standard
of practice or care was breached by the health professional or health
facility receiving the notice.

(c) The actions that should have been taken or omitted by the
health professional or health facility in order to have complied
with the applicable standard of practice or care.

meritorious defense from a qualified medical professional and include specific facts and medical information to refute the plaintiff's claim. MCL 600.2912e. Without a fair understanding of the specific allegations against the health professional or entity, it defies explanation how an expert could properly assess the merits of the claims or how any of the individual medical caregivers could adequately respond, let alone weigh whether the claims should prompt serious settlement negotiations. Thus, it also does a serious disservice to the claimant to fail to comply with the statute and the well-established caselaw.

Moreover, while the majority states that the health professionals are in a better position to sort out who must have engaged in negligent conduct, this is not an ordinary negligence case and the statute contains specific requirements reflecting the difference. The statutory scheme is clearly intended to require more rigor in the litigation of medical malpractice cases in order to narrow the issues and to encourage settlement. The majority's reasoning ignores the plaintiff's obligations under the statutes and presumes the existence of a negligent act that will reveal itself once the health professional reviews his or her own records. This is

---

(d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

(2) Upon motion of a party for good cause shown, the court in which the complaint is filed may grant the plaintiff or, if the plaintiff is represented by an attorney, the plaintiff's attorney an additional 28 days in which to file the affidavit required under subsection (1).

(3) If the defendant in an action alleging medical malpractice fails to allow access to medical records within the time period set forth in [MCL 600.2912b(6)], the affidavit required under subsection (1) may be filed within 91 days after the filing of the complaint.

entirely at odds with the comprehensive legislative scheme and ignores that—in addition to the plaintiff's obligation to provide specific assertions about a health professional's duty, how the duty was breached, and how the breach caused the injury—medical malpractice defendants have the equal and corresponding obligation to provide the very records the majority implies are entirely within the defendants' control.

### III. CONCLUSION

For the above reasons, I would hold that, under the statute and our caselaw, plaintiff's notice of intent is simply insufficient "[b]ecause the notice examined in its entirety does not comport with plaintiff's responsibility to make a good-faith averment of all the requirements of the statute pertaining to" each health care provider. *Shember, supra* at 324. Accordingly, I would hold that the trial court should have granted defendants' motions for summary disposition.