HOFFMAN v BARRETT

Docket No. 289011. Submitted April 7, 2010, at Lansing. Decided June 3,
   2010, at 9:00 a.m.

   defective. The trial court found the notice of intent to be adequate and granted summary disposition without prejudice in favor of Barrett. Barrett appealed, contending that the dismissal should have been with prejudice.

The Court of Appeals *held*:

1. The trial court properly held that plaintiff's notice of intent was sufficient. Read as a whole, it provided all the information required by MCL 600.2912b.

2. The two-year statutory limitations period had already expired and could not thereafter be tolled when this suit was filed on October 16, 2003. The saving period of MCL 600.5852, which provides an additional two years for filing after the appointment of a personal representative, would have expired on July 27, 2003, if it had not been tolled by the application of *Mullins II*. Because *Mullins II* applied, plaintiff's notice of intent, which was filed on March 3, 2003, and was valid, tolled the running of the saving period. The action was timely filed.

3. *Waltz* did not apply in this case because this case was filed after *Omelenchuk* was decided and the saving period expired within 182 days after *Waltz* was decided. Because *Waltz* did not apply but *Omelenchuk* did, plaintiff's filing of the notice of intent tolled the saving period.

4. Filing a complaint and an affidavit of merit, even a defective one, tolls the limitations period until the affidavit is successfully challenged. The filing of the notice of intent on March 3, 2003, tolled the saving period for 182 days, but there were 146 days remaining in the saving period at that time. Therefore, when this suit was filed on October 16, 2003, there remained 101 days within which plaintiff could have filed. Plaintiff still had this time available upon the successful challenge to the affidavit of merit, and, therefore, the dismissal was properly without prejudice.

5. Plaintiff's expert was qualified to sign the affidavit of merit. Although Barrett is a board-certified general surgeon and a board-certified thoracic surgeon and plaintiff's expert is only board-certified in general surgery, the claims against Barrett, when viewed on the basis of the affidavit of merit, do not appear to require any specialized testimony pertaining to thoracic surgery.

Affirmed.

*Charfoos & Christensen, P.C.* (by *David R. Parker, J. Douglas Peters,* and *Ann K. Mandt*), for Beth Hoffman.

*Aardema, Whitelaw & Sears-Ewald, PLLC* (by *Dolores Sears-Ewald* and *Timothy P. Buchalski*), for Peter Barrett, M.D.

Before: DAVIS, P.J., and DONOFRIO and STEPHENS, JJ.

DAVIS, P.J. Defendant appeals as of right the dismissal without prejudice of plaintiff's medical malpractice action. Defendant moved for summary disposition, asserting that plaintiff's notice of intent to file her claim and affidavit of merit were deficient. Plaintiff conceded that the affidavit of merit was defective. The trial court found that the notice of intent "could be better, but [is] adequate," and therefore granted summary disposition without prejudice. This Court reviews de novo a trial court's interpretation of a statute and decision on a motion for summary disposition. *Esselman v Garden City Hosp*, 284 Mich App 209, 215-216; 772 NW2d 438 (2009). Defendant contends that dismissal should have been with prejudice. We disagree, and we affirm.

The decedent, Edgar Brown, fell from the roof of his house onto a cement driveway on January 13, 2001, and he was taken to the emergency room at Battle Creek Health Systems[1] (BCHS). Defendant, Dr. Peter Barrett, was assigned to care for the decedent. The decedent's treatment entailed, among other things, insertion of a chest tube to reinflate a lung. He was discharged from BCHS and returned to his home on January 24, 2001. The decedent developed problems at home the next day. Emergency medical services were summoned, and the decedent went into full arrest in the ambulance. He was pronounced dead at the hospital.

---

[1] Battle Creek Health Systems was originally a named defendant, but was dismissed before the summary disposition order at issue in this appeal.

This matter has been before this Court previously, in Docket No. 258982. Plaintiff was appointed personal representative on July 27, 2001. Plaintiff provided defendants[2] with a notice of intent to sue, pursuant to MCL 600.2912b(1), on March 3, 2003. Plaintiff commenced the instant suit on October 16, 2003. On August 27, 2004, the trial court granted a prior summary disposition motion in favor of defendants because, at the time, this Court had held that our Supreme Court's decision in *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004), applied retroactively. *Mullins v St Joseph Mercy Hosp*, 271 Mich App 503; 722 NW2d 666 (2006) (*Mullins I*), rev'd *Mullins v St Joseph Mercy Hosp*, 480 Mich 948 (2007) (*Mullins II*). Under a retroactive application of *Waltz*, plaintiff's suit had been filed after the wrongful death saving period had expired. The Court of Appeals affirmed the trial court's determination. *Hoffman v Barrett*, unpublished opinion per curiam of the Court of Appeals, issued May 22, 2007 (Docket No. 258982). Plaintiff applied for leave to appeal in our Supreme Court, which held the application for leave to appeal in abeyance pending the outcome of the appeal in *Mullins*. After *Mullins II* was decided, our Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court Appeals and remanded the case to the trial court for the entry of an order denying defendants' motion for summary disposition and for further proceedings. *Hoffman v Barrett*, 480 Mich 981 (2007).[3]

---

[2] Battle Creek Health Systems was still a defendant at the time of the prior appeal.

[3] In *Mullins II*, our Supreme Court held that *Waltz* did not apply to any actions filed after the decision in *Omelenchuk v City of Warren*, 461 Mich 567; 609 NW2d 177 (2000), and before 182 days after the decision in *Waltz*. *Omelenchuk* was decided on March 28, 2000, and *Waltz* was decided on April 14, 2004; the date 182 days later would be October 13,

Defendant's first argument is that this matter should have been dismissed with prejudice, rather than without prejudice, because plaintiff no longer has time to refile. While this might be true for some cases, it is not true here.

The malpractice presumably happened on or before January 24, 2001. There is a two-year statutory limitations period, and an additional possible three years under the "saving provision." The limitations period is tolled if a complaint is filed with a defective affidavit of merit, but the saving period is not. The limitations period would have expired on, at the latest, January 24, 2003. Suit was filed on October 16, 2003, so the limitations period had already expired and could not thereafter be tolled. The saving period,[4] MCL 600.5852, provides an additional two years after the appointment of a personal representative; plaintiff was appointed personal representative on July 27, 2001, so the saving period would have expired on July 27, 2003, see, generally, *Ligons v Crittenton Hosp*, 285 Mich App 337, 351-355; 776 NW2d 361 (2009),[5] if it had not been tolled by the application of *Mullins II*. Because *Mullins II* applies, plaintiff's notice of intent, which was filed on March 3, 2003, and which we conclude is valid, tolled the running of the saving period. This action was therefore timely filed.

---

2004. This matter was filed between those dates, so *Waltz* does not apply.

[4] "Saving period" or "saving provision" is a term created by our Supreme Court. See, e.g., Justice CAVANAGH's dissenting opinion in *Waltz*, 469 Mich at 662-672.

[5] While we cite this case for several legal propositions conveniently summarized therein, we offer no opinion as to the correctness of *Ligons*. *Ligons* is not controlling in this matter because the action in *Ligons* was filed on April 7, 2006, which, unlike the filing in the instant matter, was more than 182 days after *Waltz* was decided. Therefore, *Waltz* was applicable in *Ligons* but is not applicable here. See footnote 3 of this opinion.

We observe that the legal framework established by *Waltz* and *Ligons* affirmatively encourages defendants— who would obviously know whether an affidavit of merit is insufficient simply by casually reading it and determining that they do not see therein all the required elements—to engage in delaying tactics until the saving period expires and then simply arrange to have the matter dismissed on a procedural technicality instead of any substantive basis. Therefore, this framework runs directly and poisonously contrary to the longstanding policy in this state and its predecessor legal systems of resolving controversies on substantive grounds, not procedural gamesmanship and trickery. See, e.g., *Walters v Arenac Circuit Judge*, 377 Mich 37, 47; 138 NW2d 751 (1966) (opinion by O'HARA, J.) ("The trend of our jurisprudence is toward meritorious determination of issues."); *White v Mich Consol Gas Co*, 352 Mich 201, 213; 89 NW2d 439 (1958) (" 'The courts have construed [statutes of journey's accounts, longstand- ing statutes enabling plaintiffs to obtain a new writ within some number of days after an original writ is abated] liberally in furtherance of their purpose—to enable con- troversies to be decided upon substantive questions rather than upon procedural technicalities.' "), disap- proved of on other grounds in *Sanford v Ryerson & Haynes, Inc*, 396 Mich 630, 637; (1976), quoting with approval *Wilt v Smack*, 147 F Supp 700 (ED Pa, 1957); *Crowther v Ross Chem & Mfg Co*, 42 Mich App 426, 430; 202 NW2d 577 (1972) (observing, albeit in a different context, that "the policy under modern rules of procedure to dispose of cases according to their merits, rather than by applying technical rules formalistically to bar meritorious claims").

But, as observed, this case was filed after *Omelen- chuk v City of Warren*, 461 Mich 567; 609 NW2d 177 (2000), was decided, and the saving period expired

before 182 days after *Waltz* was decided. Therefore, *Waltz* does not apply to this case. *Mullins II*, 480 Mich at 948. Before the decision in *Waltz*, the saving period was understood to be tolled by filing a notice of intent exactly the same way in which the period of limitations would be tolled. *Waltz*, 469 Mich at 653-654; see also Judge O'CONNELL's dissenting opinion in *McLean v McElhaney*, 269 Mich App 196, 206-207; 711 NW2d 775 (2005). Indeed, "it was *the Court, and not the Legislature*, that labeled [MCL 600.5852] a 'saving statute' " instead of a special-purpose limitations period. *Mullins I*, 271 Mich App at 527 (MURPHY, J., dissenting) (emphasis in original). Because *Waltz* does not apply, but *Omelenchuk* does, plaintiff's filing of the notice of intent tolled the saving period. As we discuss, the trial court correctly found the notice of intent to be sufficient, so dismissal without prejudice was proper.

Plaintiff conceded that the affidavit of merit was defective. Nevertheless, filing a complaint and an affidavit of merit—even a defective one—tolls the limitations period until the affidavit is successfully challenged. *Kirkaldy v Rim*, 478 Mich 581, 585-586; 734 NW2d 201 (2007). After our Supreme Court's transmutation of the extended limitations period in MCL 600.5852 into a "saving period," see *Waltz*, 469 Mich at 662-672 (CAVANAGH, J., dissenting), the saving period would not be so tolled. *Ligons*, 285 Mich App at 353-354. However, again, *Waltz* does not apply to this matter. Pursuant to *Omelenchuk*, *Mullins II*, and a rational reading of MCL 600.5852 as providing a limitations period, the running of the additional time provided by that statute would have been tolled here by the filing of the complaint and affidavit of merit. Filing the notice of intent on March 3, 2003, tolled the saving period for 182 days, but there were in addition 146 days remaining in the saving period at that time. When this

suit was filed on October 16, 2003, there remained 101 days within which plaintiff could have filed. Plaintiff still had this time available upon the successful challenge to the affidavit of merit, and therefore dismissal was properly without prejudice.

Defendant next argues that the notice of intent was insufficient because it failed to contain a statement explaining the manner in which defendant's alleged breach of the standard of care resulted in plaintiff's decedent's injuries.[6] We agree with the trial court that the notice of intent could have been better, but was sufficient.

Under MCL 600.2912b, commencement of a medical malpractice claim requires a plaintiff to provide an advance "notice of intent" to the intended defendant; that notice must provide certain specific pieces of information, although no particular format is required. *Ligons*, 285 Mich App at 343. The information in the notice of intent must be provided in good faith, but it need not eventually be proven to be completely accurate. *Boodt v Borgess Med Ctr*, 481 Mich 558, 561; 751 NW2d 44 (2008). Furthermore, the information need only be detailed enough to "allow the potential defendants to understand the claimed basis of the impending malpractice action," particularly given that it is being provided before discovery would ordinarily have begun. *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 691, 692 n 7; 684 NW2d 711 (2004). A bare statement that the alleged negligence caused the harm is insufficient, *Boodt*, 481 Mich at 560, but the entire

---

[6] Defendant also argues that the notice of intent failed to separate the standards of care applicable to the different defendants, but because there were only two named defendants, one of which is no longer a party, and because the only articulated failures pertain to Dr. Barrett, we do not believe that the notice is deficient on this basis.

notice must be read and considered as a whole, rather than piecemeal, *Ligons*, 285 Mich App at 344.

Plaintiff's notice of intent provided,[7] in relevant part, as follows:

### SECTION 2912b NOTICE OF INTENT TO FILE CLAIM

RE: EDGAR BROWN, DECEASED

This Notice is intended to apply to the following healthcare professionals, entities and/or facilities as well as their employees or agents, actual or ostensible, who were involved in the evaluation, care and/or treatment of EDGAR BROWN, DECEASED.

DR. PETER BARRETT, BATTLE CREEK HEALTH SYSTEMS, AND ANY AND ALL PROFESSIONAL CORPORATIONS AND ALL AGENTS AND EMPLOYEES, ACTUAL OR OSTENSIBLE, THEREOF.

#### I. FACTUAL BASIS OF THE CLAIM

On January 13, 2001, Edgar Brown fell from a ladder and was brought to Battle Creek Health ·Systems Emergency Room. He was found to have multiple rib fractures and a right pneumothorax.[8] Dr. Peter Barrett was assigned to care for Mr. Brown and he was admitted to the hospital.

A chest tube was inserted and was removed on January 19, 2001. Mr. Brown developed an ileus[9] and a nasogastric tube[10] was inserted. Between the time of his admission and his discharge, Mr. Brown continued to have diminished breath sounds. His last chest x-ray was

---

[7] We have added footnotes explaining medical terms used. These definitions have been culled from *Stedman's Medical Dictionary* (26th ed); 1 Schmidt, *Attorneys' Dictionary of Medicine* (2000 rev); and <http://emedicine.medscape.com> (accessed May 5, 2010).

[8] Abnormal presence of air inside the pleural cavity, which is the membrane-lined cavity in the thorax surrounding the lungs.

[9] An obstruction or blockage of the intestine or bowel.

[10] A tube inserted into the stomach through the nose, used for feeding or for removing fluids.

taken on January 20, 2001 and his last abdominal x-ray was taken on January 19, 2001. Mr. Brown was discharged home on January 24, 2001. He had a distended abdomen and was still having difficulty breathing.

Within 24 hours of discharge, Mr. Brown became short of breath while talking, his abdomen remained distended and his daughter called for an ambulance. Mr. Brown went into full arrest in the ambulance. The cause of death was determined to be complications of multiple injuries from [sic]. On autopsy, Mr. Brown was found to have right pulmonary atelectasis[11] and right empyema/pleuritis,[12] as well as an intestinal ileus.[13]

## II. APPLICABLE STANDARD OF PRACTICE OR CARE ALLEGED

A reasonable and prudent physician and/or hospital staff would have:

a. Monitored a patient such as Mr. Brown carefully and regularly, including, but not limited to, having performed full diagnostic tests such as regular chest x-rays and abdominal films when the patient was exhibiting pulmonary and gastrointestinal problems.

b. Performed full physical examinations of a patient in circumstances such as Edgar Brown, including respiratory and abdominal assessments on a regular basis.

c. Adequately assessed and intervened for respiratory compromise in a patient such as Edgar Brown.

d. Refrained from discharging a patient such as Edgar Brown without having performed a complete, full and adequate assessment, including all diagnostic tests to make sure that his pulmonary status and gastrointestinal status were stable.

e. Refrained from discharging a patient in the condition of Edgar Brown.

---

[11] A collapsed lung.

[12] Empyema is an accumulation of pus in the body cavity. Pleuritis is an inflammation of the lining around the lungs.

[13] Again, an obstruction or blockage of the intestine.

f. Refrained from discharging a patient such as Edgar Brown without appropriate home care follow-up and equipment, including, but not limited to, oxygen.

g. Provided appropriate treatment for a patient such as Edgar Brown who obviously, while in the hospital, continued to have respiratory distress and gastrointestinal problems.

### III. THE MANNER IN WHICH IT IS CLAIMED THAT THE STANDARDS OF PRACTICE OR CARE WERE BREACHED

The defendant physician and/or hospital staff did not:

a. Monitor a patient such as Mr. Brown carefully and regularly, including, but not limited to, perform full diagnostic tests such as regular chest x-rays and abdominal films when the patient was exhibiting pulmonary and gastrointestinal problems.

b. Perform full physical examinations of a patient in circumstances such as Edgar Brown, including respiratory and abdominal assessments on a regular basis.

c. Adequately assess and intervene for respiratory compromise in a patient such as Edgar Brown.

d. Refrain from discharging a patient such as Edgar Brown without having performed a complete, full and adequate assessment, including all diagnostic tests to make sure that his pulmonary status and gastrointestinal status were stable.

e. Refrain from discharging a patient in the condition of Edgar Brown.

f. Refrain from discharging a patient such as Edgar Brown without appropriate home care follow-up and equipment, including, but not limited to, oxygen.

g. Provide appropriate treatment for a patient such as Edgar Brown who obviously, while in the hospital, continuing [sic] to have respiratory distress and gastrointestinal problems.

## IV. THE ACTION THAT SHOULD HAVE BEEN TAKEN TO ACHIEVE COMPLIANCE WITH THE STANDARD OF PRACTICE OR CARE

A reasonable and prudent physician and/or hospital staff should have:

a. Monitored a patient such as Mr. Brown carefully and regularly, including, but not limited to, having performed full diagnostic tests such as regular chest x-rays and abdominal films when the patient was exhibiting pulmonary and gastrointestinal problems.

b. Performed full physical examinations of a patient in circumstances such as Edgar Brown, including respiratory and abdominal assessments on a regular basis.

c. Adequately assessed and intervened for respiratory compromise in a patient such as Edgar Brown.

d. Refrained from discharging a patient such as Edgar Brown without having performed a complete, full and adequate assessment, including all diagnostic tests to make sure that his pulmonary status and gastrointestinal status were stable.

e. Refrained from discharging a patient in the condition of Edgar Brown.

f. Refrained from discharging a patient such as Edgar Brown without appropriate home care follow-up and equipment, including, but not limited to, oxygen.

g. Provided appropriate treatment for a patient such as Edgar Brown who obviously, while in the hospital, continued to have respiratory distress and gastrointestinal problems.

## V. THE MANNER IN WHICH THE BREACH WAS THE PROXIMATE CAUSE OF CLAIMED INJURY

As a proximate result of the defendants' conduct, Edgar Brown died prematurely from his injuries.

When the final statement is viewed *in isolation*, it does in fact amount to no more than a bare statement that the alleged negligence caused the decedent's injuries.

However, the proper way to review the notice of intent is as a whole, rather than viewing one part in isolation. *Ligons*, 285 Mich App at 344. Significantly, a notice of intent is insufficient if it "*only* provides notice or *only* provides 'a statement.' It must do both." *Esselman*, 284 Mich App at 220. The required notification need only to be set forth with the same level of specificity as "would be required of allegations in a complaint or other pleading: [the statement] must only give fair notice to the other party." *Id.* at 219.

As was the situation in *Esselman*, the statement here is not sufficient to provide the requisite notice all by itself, but it is also not a tautology. See *id.* at 217. A plain reading of plaintiff's notice of intent *as a whole* does not leave the reader guessing about how the decedent died as a proximate result of defendant's alleged inaction, at least when some of the technical medical terms are explained. The decedent, while under defendant's care, was suffering from readily diagnosable life-threatening conditions that inevitably became fatal because defendant simply failed to do anything about those conditions. The manner in which the breach of the standard of care proximately caused the harm is just that simple and straightforward: defendant did not investigate the significance of the decedent's symptoms and did not discover or properly deal with the causes of those symptoms, and because those causes are fatal if not dealt with, the decedent died. All the required information is plainly apparent from reading the notice of intent as a whole.

Defendant finally argues that plaintiff's expert was not qualified to sign the affidavit of merit or render standard-of-care testimony against him.[14] Defendant

---

[14] This issue is moot in the instant appeal, given plaintiff's concession that the affidavit of merit was otherwise defective, but we address the

bases this argument on the fact that he is a board-certified general surgeon and a board-certified thoracic surgeon, whereas plaintiff's expert is only board-certified in general surgery. We decline to address whether plaintiff's expert is qualified to render standard-of-care testimony at trial, such considerations being premature at the affidavit-of-merit stage of proceedings. *Grossman v Brown*, 470 Mich 593, 600; 685 NW2d 198 (2004). We conclude that plaintiff's expert was qualified to sign the affidavit of merit.

Pursuant to MCL 600.2912d(1) and MCL 600.2169, a plaintiff must "file an affidavit of merit signed by a physician who counsel reasonably believes specializes in the same specialty as the defendant physician," including a reasonable belief that the expert holds an identical board certification as the defendant physician, if the defendant physician is so certified. *Grossman*, 470 Mich at 596. Dr. Barrett is board-certified by the American Board of Thoracic Surgery, which defines its specialty as "the operative, perioperative, and surgical critical care of patients with acquired and congenital pathologic conditions within the chest," including the heart, lungs, airways, and chest injuries.[15] Plaintiff's expert is not.

However, "not *all* specialties and board certificates must match." *Woodard v Custer*, 476 Mich 545, 558; 719 NW2d 842 (2006). Because irrelevant testimony is generally inadmissible, *id.* at 568-572, the plaintiff's expert need only specialize or be certified in subfields relevant to the expert's intended testimony, *id.* at 559. Therefore, a plaintiff's expert need only match "the specialty engaged in by the defendant physician during the

___

matter because it will become relevant upon plaintiff's refiling the action.

[15] <http://www.abts.org/sections/Definition_of_Thorac/index.html> (accessed May 5, 2010).

course of the alleged malpractice, and, if the defendant physician is board certified in that specialty, the plaintiff's expert must also be board certified in that specialty." *Id.* at 560; see also *Gonzalez v St John Hosp & Med Ctr (On Reconsideration)*, 275 Mich App 290, 302-303; 739 NW2d 392 (2007). The mere fact that defendant has a specialty that plaintiff's expert lacks does not automatically disqualify plaintiff's expert from properly signing plaintiff's affidavit of merit.

Defendant's position seems superficially meritorious, because the decedent did suffer injuries to his ribs, the decedent was later determined to have a collapsed lung, and the pleural cavity, from which 850 milliters[16] of brown pus was removed, surrounds the lungs. A significant portion of the decedent's injuries were indeed located in a part of the body that would fall in the "thoracic" category. However, the decedent was also found to have a lacerated spleen, a necrotic[17] gallbladder, a necrotic liver, intestinal ileus, and acalculous cholecystitis.[18] Clearly, a significant portion of the decedent's injuries did *not* fall under the thoracic category. Moreover, the obvious import of the affidavit of merit is not that defendant failed to do anything particularly relevant to thoracic surgery or medicine, but that defendant failed *generally* to treat the decedent properly.

At least on the basis of the affidavit of merit, the claims against defendant do not appear to require any

---

[16] Slightly less than 3²/₃ cups.

[17] Necrosis refers to localized death of cells or tissue because of injury or disease, rather than as a result of natural causes.

[18] Cholecystitis is an inflammation of the gallbladder; "acalculous" refers to the absence of stones. Acalculous cholecystitis apparently has a relatively high mortality rate and is commonly observed in patients who have suffered trauma.

specialized testimony pertaining to thoracic surgery. Therefore, plaintiff's expert was qualified to sign the affidavit of merit.

Affirmed.