HOFFMAN v BARRETT (ON REMAND)

Docket No. 289011. Submitted November 15, 2011, at Lansing. Decided
March 8, 2012, at 9:10 a.m. Leave to appeal denied, 493 Mich 925.

Beth Hoffman was appointed personal representative of the estate of
Edgar Brown, deceased, on July 27, 2001. Hoffman provided
defendants, Peter Barrett, M.D., and Battle Creek Health Systems,
a notice of intent to file a medical malpractice action on March 3,
2003, and filed the action on October 16, 2003. On August 27,
2004, the court, James C. Kingsley, J., granted summary disposi-
tion in favor of defendants because, at the time, the Court of
Appeals had held in *Mullins v St Joseph Mercy Hosp*, 271 Mich App
503 (2006) (*Mullins I*), that the Supreme Court's decision in *Waltz
v Wyse*, 469 Mich 642 (2004), applied retroactively. Under the
retroactive application of *Waltz*, plaintiff's action had been filed
after the wrongful death saving period had expired. The Court of
Appeals, METER, P.J., and K. F. KELLY and FORT HOOD, JJ., affirmed
the trial court's determination in an unpublished opinion per
curiam, issued May 22, 2007 (Docket No. 258982). The Supreme
Court held plaintiff's application for leave to appeal in abeyance
pending the outcome of an appeal in the Supreme Court of the
*Mullins* action. The Supreme Court subsequently reversed the
judgment of the Court of Appeals in *Mullins*, concluding that
*Waltz* "does not apply to any causes of action filed after *Omelen-
chuk v City of Warren*, 461 Mich 567 (2000), was decided in which
the saving period expired, i.e., two years had elapsed since the
personal representative was appointed, sometime between the
date that *Omelenchuk* was decided and within 182 days after *Waltz*
was decided. All other causes of action are controlled by *Waltz*."
*Mullins v St Joseph Mercy Hosp*, 480 Mich 948 (2007) (*Mullins II*).
Subsequently, the Supreme Court, in lieu of granting plaintiff's
application for leave to appeal in this case, reversed the judgment
of the Court of Appeals and remanded the case to the trial court for
the entry of an order denying defendants' motion for summary
disposition and for further proceedings. 480 Mich 981 (2007)
(*Hoffman I*). On remand in the trial court, Battle Creek Health
Systems was dismissed as a defendant. Barrett moved for sum-
mary disposition, asserting that plaintiff's notice of intent and
affidavit of merit were deficient. Plaintiff conceded that the

affidavit of merit was defective. The trial court found the notice of intent to be adequate and granted summary disposition without prejudice in favor of Barrett. Barrett appealed, contending that the dismissal should have been with prejudice. The Court of Appeals, DAVIS, P.J., and DONOFRIO and STEPHENS, JJ., affirmed, 288 Mich App 536 (2010) (*Hoffman II*), holding that the trial court properly determined that plaintiff's notice of intent was sufficient when read as a whole. The two-year statutory limitations period had already expired and could not thereafter be tolled when the suit was filed on October 16, 2003. The saving period of MCL 600.5852, which provides an additional two years for filing after the appointment of a personal representative, would have expired on July 27, 2003, if it had not been tolled by the application of *Mullins II*. Because *Mullins II* applied, plaintiff's notice of intent, which was filed on March 3, 2003, and was valid, tolled the running of the saving period and the action was timely filed. The Court of Appeals noted in *Hoffman II* that *Waltz* did not apply because this case was filed after *Omelenchuk* was decided and the saving period expired within 182 days after *Waltz* was decided. The Court stated that before the decision in *Waltz*, the saving period was understood to be tolled by filing a notice of intent exactly the same way in which the period of limitations would be tolled. Because *Waltz* did not apply but *Omelenchuk* did, plaintiff's filing of the notice of intent tolled the saving period. The Court further noted that the filing of a complaint and an affidavit of merit, even a defective one, tolls the limitations period until the affidavit of merit is successfully challenged. The *Hoffman II* Court reasoned that the filing of the notice of intent tolled the saving period for 182 days, but there were in addition 146 days remaining in the saving period at that time. When the suit was filed, there remained 101 days within which plaintiff could have filed. Because plaintiff still had this time available upon the successful challenge to the affidavit of merit, the trial court's dismissal was properly without prejudice. Finally, the Court of Appeals held in *Hoffman II* that plaintiff's expert was qualified to sign the affidavit of merit because, although Barrett is a board-certified general surgeon and a board-certified thoracic surgeon and plaintiff's expert is only board-certified in general surgery, the claims against Barrett, when viewed on the basis of the affidavit of merit, do not appear to require any specialized testimony pertaining to thoracic surgery. Barrett sought leave to appeal in the Supreme Court, which held the application in abeyance pending, in part, the decision in *Ligons v Crittenton Hosp*, 490 Mich 61 (2011), which held that a medical malpractice action must be dismissed with prejudice if a defective affidavit of merit is filed after the expiration of both the statutory limitations

period and the saving period. Following its decision in *Ligons*, the Supreme Court, in lieu of granting Barrett's application for leave to appeal, vacated the Court of Appeals' opinion in *Hoffman II* and remanded the case to the Court of Appeals for reconsideration in light of *Ligons*. 490 Mich 890 (2011).

On remand, the Court of Appeals *held*:

1. Key to the Supreme Court's decision in *Ligons* was the applicability of *Waltz*, in which the Court determined that MCL 600.5856 tolls only statutes of limitation or repose and does not toll the wrongful death saving period provided in MCL 600.5852. Because *Waltz* is inapplicable in the present case, *Ligons* does not affect the previous decision of the Court of Appeals in *Hoffman II* that plaintiff's filing of her notice of intent tolled the saving period and the filing of her complaint and affidavit of merit would have tolled the running of the additional time provided under the saving provision. Because there remained time within which plaintiff could refile her suit, the trial court properly dismissed the action without prejudice.

2. In reviewing the sufficiency of a notice of intent, the entire notice must be read and considered as a whole, rather than piecemeal. The information in the notice need only be detailed enough to allow the potential defendant to understand the claimed basis of the impending malpractice action and need only be set forth with the same level of specificity as would be required of allegations in a complaint or other pleading in order to give fair notice.

3. A plain reading of plaintiff's notice of intent as a whole does not leave the reader guessing about how the decedent died as a proximate result of Barrett's alleged inaction. All the required information is plainly apparent from reading the notice of intent as a whole. Although the notice of intent could have been better, it was sufficient.

4. MCL 600.2912d(1) and MCL 600.2169 provide that a plaintiff must file an affidavit of merit signed by a physician who counsel reasonably believes specializes in the same specialty as the defendant physician, including a reasonable belief that the expert holds a board certification identical to that of the defendant physician, if the defendant physician is so certified. However, because irrelevant testimony is generally inadmissible, the plaintiff's expert need only specialize or be certified in subfields relevant to the expert's intended testimony. Therefore, a plaintiff's expert need only match the specialty engaged in by the defendant physician during the course of the alleged malpractice and, if the defendant physician is board-certified in that specialty, the plain-

tiff's expert must also have a board certification in that specialty. The mere fact that a defendant has a specialty that the plaintiff's expert lacks does not automatically disqualify the plaintiff's expert from properly signing the plaintiff's affidavit of merit.

5. Plaintiff's expert was qualified to sign the affidavit of merit. Although Barrett is a board-certified general surgeon and a board-certified thoracic surgeon and plaintiff's expert is only board certified in general surgery, the claims against Barrett, when viewed on the basis of the affidavit of merit, do not appear to require any specialized testimony pertaining to thoracic surgery.

Affirmed.

*Charfoos & Christensen, P.C.* (by *David R. Parker, J. Douglas Peters,* and *Ann K. Mandt*), for Beth Hoffman.

*Aardema, Whitelaw & Sears-Ewald, PLLC* (by *Dolores Sears-Ewald* and *Timothy P. Buchalski*), for Peter Barrett, M.D.

ON REMAND

Before: DONOFRIO, P.J., and K. F. KELLY and STEPHENS, JJ.

PER CURIAM. This case is before us on remand from our Supreme Court for reconsideration in light of *Ligons v Crittenton Hosp*, 490 Mich 61; 803 NW2d 271 (2011) (*Ligons II*), in which the Court held that a medical malpractice action must be dismissed with prejudice if a defective affidavit of merit (AOM) is filed after the expiration of both the statutory limitations period and the saving period. *Hoffman v Barrett*, 490 Mich 890 (2011). Key to the Court's decision in *Ligons* was the applicability of *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004), in which the Court determined that MCL 600.5856 tolls only statutes of limitations or repose and does not toll the wrongful death saving period provided in MCL 600.5852. See *Ligons II*, 490 Mich at 74-76, 89-90. Because *Waltz* is inapplicable in

the present case, as our Supreme Court previously determined,[1] *Ligons II* does not affect our previous decision, and we again affirm.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case is before this Court for the third time. In *Hoffman v Barrett*, 288 Mich App 536, 538-539; 794 NW2d 67 (2010) (*Hoffman II*), vacated 490 Mich 890 (2011), we set forth the pertinent facts and procedural history:

> The decedent, Edgar Brown, fell from the roof of his house onto a cement driveway on January 13, 2001, and he was taken to the emergency room at Battle Creek Health Systems[1] (BCHS). Defendant, Dr. Peter Barrett, was assigned to care for the decedent. The decedent's treatment entailed, among other things, insertion of a chest tube to reinflate a lung. He was discharged from BCHS and returned to his home on January 24, 2001. The decedent developed problems at home the next day. Emergency medical services were summoned, and the decedent went into full arrest in the ambulance. He was pronounced dead at the hospital.

> This matter has been before this Court previously, in Docket No. 258982. Plaintiff was appointed personal representative on July 27, 2001. Plaintiff provided defendants[2] with a notice of intent to sue, pursuant to MCL 600.2912b(1), on March 3, 2003. Plaintiff commenced the instant suit on October 16, 2003. On August 27, 2004, the trial court granted a prior summary disposition motion in favor of defendants because, at the time, this Court had held that our Supreme Court's decision in *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004), applied retroactively. *Mullins v St Joseph Mercy Hosp*, 271 Mich App 503; 722 NW2d 666 (2006) (*Mullins I*), rev'd *Mullins v St Joseph Mercy Hosp*, 480 Mich 948 (2007) (*Mullins II*). Under a

---

[1] See *Hoffman v Barrett*, 480 Mich 981 (2007) (*Hoffman I*); *Mullins v St Joseph Mercy Hosp*, 480 Mich 948 (2007) (*Mullins II*).

retroactive application of *Waltz*, plaintiff's suit had been filed after the wrongful death saving period had expired. The Court of Appeals affirmed the trial court's determination. *Hoffman v Barrett*, unpublished opinion per curiam of the Court of Appeals, issued May 22, 2007 (Docket No. 258982). Plaintiff applied for leave to appeal in our Supreme Court, which held the application for leave to appeal in abeyance pending the outcome of the appeal in *Mullins*. After *Mullins II* was decided, our Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court Appeals and remanded the case to the trial court for the entry of an order denying defendants' motion for summary disposition and for further proceedings. *Hoffman v Barrett*, 480 Mich 981 (2007) [*Hoffman I*].[3]

---

[1] Battle Creek Health Systems was originally a named defendant, but was dismissed before the summary disposition order at issue in this appeal.

[2] Battle Creek Health Systems was still a defendant at the time of the prior appeal.

[3] In *Mullins II*, our Supreme Court held that *Waltz* did not apply to any actions filed after the decision in *Omelenchuk v City of Warren*, 461 Mich 567; 609 NW2d 177 (2000), and before 182 days after the decision in *Waltz*. *Omelenchuk* was decided on March 28, 2000, and *Waltz* was decided on April 14, 2004; the date 182 days later would be October 13, 2004. This matter was filed between those dates, so *Waltz* does not apply.

---

On remand, defendant Dr. Barrett again moved for summary disposition, arguing that plaintiff's notice of intent to file suit and AOM were deficient. The trial court determined that the notice of intent was adequate, and plaintiff conceded that her AOM was defective. The trial court dismissed this case without prejudice. On appeal, defendant argues that the trial court should have dismissed this action *with* prejudice.

## II. EFFECT OF *LIGONS II* ON *HOFFMAN II*

Defendant argues that dismissal with prejudice was required because there was no time remaining for plaintiff to timely refile her lawsuit. In *Hoffman II*, this Court disagreed and determined that, because *Waltz* is inapplicable, plaintiff's filing of her notice of intent tolled the saving period. This Court stated, in relevant part, in *Hoffman II*, 288 Mich App at 540-543:

> The malpractice presumably happened on or before January 24, 2001. There is a two-year statutory limitations period, and an additional possible three years under the "saving provision." The limitations period is tolled if a complaint is filed with a defective affidavit of merit, but the saving period is not. The limitations period would have expired on, at the latest, January 24, 2003. Suit was filed on October 16, 2003, so the limitations period had already expired and could not thereafter be tolled. The saving period, MCL 600.5852, provides an additional two years after the appointment of a personal representative; plaintiff was appointed personal representative on July 27, 2001, so the saving period would have expired on July 27, 2003, see, generally, *Ligons v Crittenton Hosp*, 285 Mich App 337, 351-355; 776 NW2d 361 (2009) [*Ligons I*],[5] if it had not been tolled by the application of *Mullins II*. Because *Mullins II* applies, plaintiff's notice of intent, which was filed on March 3, 2003, and which we conclude is valid, tolled the running of the saving period. This action was therefore timely filed.

\* \* \*

> [A]s observed, this case was filed after *Omelenchuk v City of Warren*, 461 Mich 567; 609 NW2d 177 (2000), was decided, and the saving period expired before 182 days after *Waltz* was decided. Therefore, *Waltz* does not apply to this case. *Mullins II*, 480 Mich at 948. Before the decision in *Waltz*, the saving period was understood to be tolled by filing a notice of intent exactly the same way in which the

period of limitations would be tolled. *Waltz*, 469 Mich at 653-654 . . . . Because *Waltz* does not apply, but *Omelenchuk* does, plaintiff's filing of the notice of intent tolled the saving period. As we discuss, the trial court correctly found the notice of intent to be sufficient, so dismissal without prejudice was proper.

Plaintiff conceded that the affidavit of merit was defective. Nevertheless, filing a complaint and an affidavit of merit—even a defective one—tolls the limitations period until the affidavit is successfully challenged. *Kirkaldy v Rim*, 478 Mich 581, 585-586; 734 NW2d 201 (2007). . . . Filing the notice of intent on March 3, 2003, tolled the saving period for 182 days, but there were in addition 146 days remaining in the saving period at that time. When this suit was filed on October 16, 2003, there remained 101 days within which plaintiff could have filed. Plaintiff still had this time available upon the successful challenge to the affidavit of merit, and therefore dismissal was properly without prejudice.

---

[5] While we cite this case for several legal propositions conveniently summarized therein, we offer no opinion as to the correctness of *Ligons* [*I*]. *Ligons* [*I*] is not controlling in this matter because the action in *Ligons* [*I*] was filed on April 7, 2006, which, unlike the filing in the instant matter, was more than 182 days after *Waltz* was decided. Therefore, *Waltz* was applicable in *Ligons* [*I*] but is not applicable here. See footnote 3 of this opinion.[*]

---

On July 29, 2011, our Supreme Court decided *Ligons II*, in which it determined that dismissal with prejudice was required in circumstances similar to the instant case. In that case, the plaintiff filed two AOMs, both of which were defective. *Ligons II*, 490 Mich at 77-79. He failed to commence his lawsuit within the limitations period, but filed his complaint and accompanying AOMs within the saving period provided by MCL 600.5852. *Id.* at 89. Because the AOMs were defective, however, and

---

[*]See *supra* at 654—REPORTER.

the plaintiff was unable to amend the AOMs retroactively, dismissal with prejudice was required. *Id.* at 79-90. The *Ligons II* Court stated:

> Although the timely filing of a defective AOM tolls the limitations period until a court finds the AOM defective, an AOM filed during a saving period after the limitations period has expired tolls nothing, as the limitations period has run and *the saving period may not be tolled*. In this case, because the limitations period had run before the complaint was filed, plaintiff cannot amend his defective AOMs retroactively. Given that the saving period has expired, plaintiff's case had to be dismissed with prejudice. [*Id.* at 90 (emphasis added).]

As the emphasized language in the preceding paragraph indicates, *Waltz* was applicable in *Ligons*. Thus, pursuant to *Waltz*, the plaintiff's filing of the AOMs did not toll the saving period. *Ligons II*, 490 Mich at 74-76, 89-90. In this case, however, *Waltz* is not applicable. *Hoffman I*, 480 Mich at 981; *Mullins II*, 480 Mich at 948. Accordingly, as stated previously in *Hoffman II*, 288 Mich App at 542, plaintiff's filing of her notice of intent tolled the saving period and the filing of her complaint and AOM would have tolled the running of the additional time provided under the saving provision. Because there remained time within which plaintiff could refile her suit, the trial court properly dismissed the action without prejudice.

### III. REMAINING ISSUES

Defendant also argues that plaintiff's notice of intent was insufficient and contends that plaintiff's expert was not qualified to sign the AOM or offer standard-of-care testimony against him. Because *Ligons II* does not implicate those issues, and our Supreme Court vacated this Court's entire opinion in *Hoffman II*, we adopt

verbatim our previous analysis of those issues in *Hoffman II*, 288 Mich App at 543-551:

> Defendant next argues that the notice of intent was insufficient because it failed to contain a statement explaining the manner in which defendant's alleged breach of the standard of care resulted in plaintiff's decedent's injuries.[6] We agree with the trial court that the notice of intent could have been better, but was sufficient.
>
> Under MCL 600.2912b, commencement of a medical malpractice claim requires a plaintiff to provide an advance "notice of intent" to the intended defendant; that notice must provide certain specific pieces of information, although no particular format is required. *Ligons [I]*, 285 Mich App at 343. The information in the notice of intent must be provided in good faith, but it need not eventually be proven to be completely accurate. *Boodt v Borgess Med Ctr*, 481 Mich 558, 561; 751 NW2d 44 (2008). Furthermore, the information need only be detailed enough to "allow the potential defendants to understand the claimed basis of the impending malpractice action," particularly given that it is being provided before discovery would ordinarily have begun. *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 691, 692 n 7; 684 NW2d 711 (2004). A bare statement that the alleged negligence caused the harm is insufficient, *Boodt*, 481 Mich at 560, but the entire notice must be read and considered as a whole, rather than piecemeal, *Ligons [I]*, 285 Mich App at 344.
>
> Plaintiff's notice of intent provided,[7] in relevant part, as follows:
>
> "SECTION 2912b NOTICE OF INTENT TO FILE CLAIM
>
> "RE: EDGAR BROWN, DECEASED
>
> "This Notice is intended to apply to the following healthcare professionals, entities and/or facilities as well as their employees or agents, actual or ostensible, who were involved in the evaluation, care and/or treatment of EDGAR BROWN, DECEASED.

"DR. PETER BARRETT, BATTLE CREEK HEALTH SYSTEMS, AND ANY AND ALL PROFESSIONAL CORPORATIONS AND ALL AGENTS AND EMPLOYEES, ACTUAL OR OSTENSIBLE, THEREOF.

### "I. FACTUAL BASIS OF THE CLAIM

"On January 13, 2001, Edgar Brown fell from a ladder and was brought to Battle Creek Health Systems Emergency Room. He was found to have multiple rib fractures and a right pneumothorax.[8] Dr. Peter Barrett was assigned to care for Mr. Brown and he was admitted to the hospital.

"A chest tube was inserted and was removed on January 19, 2001. Mr. Brown developed an ileus[9] and a nasogastric tube[10] was inserted. Between the time of his admission and his discharge, Mr. Brown continued to have diminished breath sounds. His last chest x-ray was taken on January 20, 2001 and his last abdominal x-ray was taken on January 19, 2001. Mr. Brown was discharged home on January 24, 2001. He had a distended abdomen and was still having difficulty breathing.

"Within 24 hours of discharge, Mr. Brown became short of breath while talking, his abdomen remained distended and his daughter called for an ambulance. Mr. Brown went into full arrest in the ambulance. The cause of death was determined to be complications of multiple injuries from [sic]. On autopsy, Mr. Brown was found to have right pulmonary atelectasis[11] and right empyema/pleuritis,[12] as well as an intestinal ileus.[13]

### "II. APPLICABLE STANDARD OF PRACTICE OR CARE ALLEGED

"A reasonable and prudent physician and/or hospital staff would have:

"a. Monitored a patient such as Mr. Brown carefully and regularly, including, but not limited to, having performed full diagnostic tests such as regular chest x-rays and abdominal films when the patient was exhibiting pulmonary and gastrointestinal problems.

"b. Performed full physical examinations of a patient in circumstances such as Edgar Brown['s], including respiratory and abdominal assessments on a regular basis.

"c. Adequately assessed and intervened for respiratory compromise in a patient such as Edgar Brown.

"d. Refrained from discharging a patient such as Edgar Brown without having performed a complete, full and adequate assessment, including all diagnostic tests to make sure that his pulmonary status and gastrointestinal status were stable.

"e. Refrained from discharging a patient in the condition of Edgar Brown.

"f. Refrained from discharging a patient such as Edgar Brown without appropriate home care follow-up and equipment, including, but not limited to, oxygen.

"g. Provided appropriate treatment for a patient such as Edgar Brown who obviously, while in the hospital, continued to have respiratory distress and gastrointestinal problems.

"III. THE MANNER IN WHICH IT IS CLAIMED THAT THE STANDARDS OF PRACTICE OR CARE WERE BREACHED

"The defendant physician and/or hospital staff did not:

"a. Monitor a patient such as Mr. Brown carefully and regularly, including, but not limited to, perform full diagnostic tests such as regular chest x-rays and abdominal films when the patient was exhibiting pulmonary and gastrointestinal problems.

"b. Perform full physical examinations of a patient in circumstances such as Edgar Brown['s], including respiratory and abdominal assessments on a regular basis.

"c. Adequately assess and intervene for respiratory compromise in a patient such as Edgar Brown.

"d. Refrain from discharging a patient such as Edgar Brown without having performed a complete, full and adequate assessment, including all diagnostic tests to make

sure that his pulmonary status and gastrointestinal status were stable.

"e. Refrain from discharging a patient in the condition of Edgar Brown.

"f. Refrain from discharging a patient such as Edgar Brown without appropriate home care follow-up and equipment, including, but not limited to, oxygen.

"g. Provide appropriate treatment for a patient such as Edgar Brown who obviously, while in the hospital, continuing [sic] to have respiratory distress and gastrointestinal problems.

"IV. THE ACTION THAT SHOULD HAVE BEEN TAKEN TO ACHIEVE COMPLIANCE WITH THE STANDARD OF PRACTICE OR CARE

"A reasonable and prudent physician and/or hospital staff should have:

"a. Monitored a patient such as Mr. Brown carefully and regularly, including, but not limited to, having performed full diagnostic tests such as regular chest x-rays and abdominal films when the patient was exhibiting pulmonary and gastrointestinal problems.

"b. Performed full physical examinations of a patient in circumstances such as Edgar Brown, including respiratory and abdominal assessments on a regular basis.

"c. Adequately assessed and intervened for respiratory compromise in a patient such as Edgar Brown.

"d. Refrained from discharging a patient such as Edgar Brown without having performed a complete, full and adequate assessment, including all diagnostic tests to make sure that his pulmonary status and gastrointestinal status were stable.

"e. Refrained from discharging a patient in the condition of Edgar Brown.

"f. Refrained from discharging a patient such as Edgar Brown without appropriate home care follow-up and equipment, including, but not limited to, oxygen.

"g. Provided appropriate treatment for a patient such as Edgar Brown who obviously, while in the hospital, continued to have respiratory distress and gastrointestinal problems.

> "V. THE MANNER IN WHICH THE BREACH WAS THE
> PROXIMATE CAUSE OF CLAIMED INJURY

"As a proximate result of the defendants' conduct, Edgar Brown died prematurely from his injuries."

When the final statement is viewed *in isolation*, it does in fact amount to no more than a bare statement that the alleged negligence caused the decedent's injuries. However, the proper way to review the notice of intent is as a whole, rather than viewing one part in isolation. *Ligons [I]*, 285 Mich App at 344. Significantly, a notice of intent is insufficient if it *"only* provides notice or *only* provides 'a statement.' It must do both." *Esselman [v Garden City Hosp*, 284 Mich App 209, 220; 772 NW2d 438 (2009)]. The required notification need only to be set forth with the same level of specificity as "would be required of allegations in a complaint or other pleading: [the statement] must only give fair notice to the other party." *Id.* at 219.

As was the situation in *Esselman*, the statement here is not sufficient to provide the requisite notice all by itself, but it is also not a tautology. See *id.* at 217. A plain reading of plaintiff's notice of intent *as a whole* does not leave the reader guessing about how the decedent died as a proximate result of defendant's alleged inaction, at least when some of the technical medical terms are explained. The decedent, while under defendant's care, was suffering from readily diagnosable life-threatening conditions that inevitably became fatal because defendant simply failed to do anything about those conditions. The manner in which the breach of the standard of care proximately caused the harm is just that simple and straightforward: defendant did not investigate the significance of the decedent's symptoms and did not discover or properly deal with the causes of those symptoms, and because those causes are fatal if not

dealt with, the decedent died. All the required information is plainly apparent from reading the notice of intent as a whole.

Defendant finally argues that plaintiff's expert was not qualified to sign the affidavit of merit or render standard-of-care testimony against him.[14] Defendant bases this argument on the fact that he is a board-certified general surgeon and a board-certified thoracic surgeon, whereas plaintiff's expert is only board-certified in general surgery. We decline to address whether plaintiff's expert is qualified to render standard-of-care testimony at trial, such considerations being premature at the affidavit-of-merit stage of proceedings. *Grossman v Brown*, 470 Mich 593, 600; 685 NW2d 198 (2004). We conclude that plaintiff's expert was qualified to sign the affidavit of merit.

Pursuant to MCL 600.2912d(1) and MCL 600.2169, a plaintiff must "file an affidavit of merit signed by a physician who counsel reasonably believes specializes in the same specialty as the defendant physician," including a reasonable belief that the expert holds an identical board certification as the defendant physician, if the defendant physician is so certified. *Grossman*, 470 Mich at 596. Dr. Barrett is board-certified by the American Board of Thoracic Surgery, which defines its specialty as "the operative, perioperative, and surgical critical care of patients with acquired and congenital pathologic conditions within the chest," including the heart, lungs, airways, and chest injuries.[15] Plaintiff's expert is not.

However, "not *all* specialties and board certificates must match." *Woodard v Custer*, 476 Mich 545, 558; 719 NW2d 842 (2006). Because irrelevant testimony is generally inadmissible, *id.* at 568-572, the plaintiff's expert need only specialize or be certified in subfields relevant to the expert's intended testimony, *id.* at 559. Therefore, a plaintiff's expert need only match "the specialty engaged in by the defendant physician during the course of the alleged malpractice, and, if the defendant physician is board certified in that specialty, the plaintiff's expert must also be board certified in that specialty." *Id.* at 560; see also *Gonzalez v St John Hosp & Med Ctr (On Reconsideration)*,

275 Mich App 290, 302-303; 739 NW2d 392 (2007). The mere fact that defendant has a specialty that plaintiff's expert lacks does not automatically disqualify plaintiff's expert from properly signing plaintiff's affidavit of merit.

Defendant's position seems superficially meritorious, because the decedent did suffer injuries to his ribs, the decedent was later determined to have a collapsed lung, and the pleural cavity, from which 850 milliters[16] [sic] of brown pus was removed, surrounds the lungs. A significant portion of the decedent's injuries were indeed located in a part of the body that would fall in the "thoracic" category. However, the decedent was also found to have a lacerated spleen, a necrotic[17] gallbladder, a necrotic liver, intestinal ileus, and acalculous cholecystitis.[18] Clearly, a significant portion of the decedent's injuries did *not* fall under the thoracic category. Moreover, the obvious import of the affidavit of merit is not that defendant failed to do anything particularly relevant to thoracic surgery or medicine, but that defendant failed *generally* to treat the decedent properly.

At least on the basis of the affidavit of merit, the claims against defendant do not appear to require any specialized testimony pertaining to thoracic surgery. Therefore, plaintiff's expert was qualified to sign the affidavit of merit.

---

[6] Defendant also argues that the notice of intent failed to separate the standards of care applicable to the different defendants, but because there were only two named defendants, one of which is no longer a party, and because the only articulated failures pertain to Dr. Barrett, we do not believe that the notice is deficient on this basis.

[7] We have added footnotes explaining medical terms used. These definitions have been culled from *Stedman's Medical Dictionary* (26th ed); 1 Schmidt, *Attorneys' Dictionary of Medicine* (2000 rev); and <http://emedicine.medscape.com> (accessed May 5, 2010).

[8] Abnormal presence of air inside the pleural cavity, which is the membrane-lined cavity in the thorax surrounding the lungs.

[9] An obstruction or blockage of the intestine or bowel.

[10] A tube inserted into the stomach through the nose, used for feeding or for removing fluids.

[11] A collapsed lung.

[12] Empyema is an accumulation of pus in the body cavity. Pleuritis is an inflammation of the lining around the lungs.

[13] Again, an obstruction or blockage of the intestine.

[14] This issue is moot in the instant appeal, given plaintiff's concession that the affidavit of merit was otherwise defective, but we address the matter because it will become relevant upon plaintiff's refiling the action.

[15] <http://www.abts.org/sections/Definition_of_Thorac/index.html> (accessed May 5, 2010).

[16] Slightly less than 3²/₃ cups.

[17] Necrosis refers to localized death of cells or tissue because of injury or disease, rather than as a result of natural causes.

[18] Cholecystitis is an inflammation of the gallbladder; "acalculous" refers to the absence of stones. Acalculous cholecystitis apparently has a relatively high mortality rate and is commonly observed in patients who have suffered trauma.

---

Affirmed.

DONOFRIO, P.J., and K. F. KELLY and STEPHENS, JJ., concurred.